**Affirmed and Memorandum Opinion filed November 19, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00139-CR

---

**ISSAC SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1274984**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Issac Smith[1] of capital murder, and he was sentenced to life in prison without parole. *See* Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2014). In a single issue, appellant contends that the trial court abused its discretion by denying him the opportunity to cross-examine a jailhouse

---

[1] Appellant's first name is spelled in various court documents as both "Issac" and "Isaac." We use the spelling of appellant's name as it appears in the trial court's final judgment.

informant regarding the informant's mental health history. We conclude that appellant did not preserve the issue for appeal; but even if he had, exclusion of the impeachment evidence was within the trial court's discretion and was not harmful. Accordingly, we affirm the trial court's judgment.

## BACKGROUND

Complainant Julia Muckleroy called 911 for help shortly after 8:00 a.m. on June 17, 2010. Complainant, a 71-year-old widow, had been stabbed multiple times in the neck at her home and died at the hospital as a result of her injuries.

Complainant's house showed no signs of forced entry. A bloody knife was found on the floor. Complainant's purse also was found on the floor with its contents strewn about, and complainant's wallet appeared to have been rummaged through. Complainant's van was missing.

Between 8:45 and 9:00 a.m., appellant — who lived across the street from complainant — approached the neighborhood on foot and attempted to enter his home, which was within the cordoned-off crime scene area. When stopped by a police officer, appellant told the officer that he was returning home from a nearby motel where he had spent the night smoking crack cocaine and engaging the services of prostitutes. Appellant told the officer that he had ridden to the motel on his motorcycle, but had traded his motorcycle for crack cocaine while at the motel.

The motel's maintenance man testified at trial that appellant left the motel on foot between 6:30 and 7:00 a.m. on the morning of the murder. An investigating officer testified regarding surveillance footage taken from a gas station camera and a red light camera that the officer viewed shortly after the murder. Based on the footage, the officer testified that he saw a man matching appellant's description and attire walking from the direction of the motel toward

2

the direction of appellant's and complainant's neighborhood at approximately 7:24 a.m. A detective testified that it would take approximately 10 to 12 minutes to walk from the motel to complainant's house at a reasonable pace.

Complainant's van was found the next day abandoned on the side of the road. The van was several miles from complainant's house, a distance which testimony at trial suggested would take approximately 25 minutes to cover on foot. The van had been partially wiped down.

DNA testing was conducted on multiple items and surfaces in complainant's house and in complainant's van. An oral swab from complainant revealed a single sperm cell, but the amount was insufficient to obtain a DNA profile. Testing of the knife revealed complainant's DNA and the DNA of another contributor, but the results were inconclusive as to whether the contributor was appellant. DNA testing of complainant's fingernail scrapings included DNA from complainant and another individual; appellant could not be excluded as the other individual, and the probability that the DNA belonged to an unrelated, randomly selected African-American individual other than appellant was 1 in 69. Testing of the fingernail clippers used to cut complainant's nails revealed DNA consistent with appellant's; the probability that the DNA belonged to an unrelated, randomly selected African-American was 1 in 2,988.

Results from a DNA swab of complainant's purse were consistent with appellant being a contributor to the DNA. The probability that the DNA belonged to an unrelated, randomly selected African-American was 1 in 12,360.

DNA testing of the gear shift, steering wheel, and driver's armrest in complainant's van revealed DNA consistent with appellant's; the probability that

the DNA from those locations belonged to an unrelated, randomly selected African-American was 1 in 12 quintillion, 360 quadrillion.[2]

Based on the foregoing DNA results, appellant's own DNA expert concluded that there was sufficient DNA evidence to support a determination that appellant had handled complainant's purse and driven complainant's van, and that his DNA was under complainant's fingernails.

The jury found appellant guilty of intentionally causing the death of complainant while in the course of committing or attempting to commit robbery. The trial court assessed punishment at life imprisonment without parole. This appeal ensued.

## ANALYSIS

Appellant contends that the trial court abused its discretion by prohibiting appellant from cross-examining a jailhouse informant concerning the informant's mental health history.

During trial, appellant sought to cross-examine the jailhouse informant concerning the informant's mental health history in an attempt to impeach the informant's credibility. The proposed line of questioning was based on competency and sanity evaluations of the informant from December 2010.[3] The competency evaluation revealed that the informant had been hospitalized an

---

[2] Complainant's son testified that appellant never worked on or drove complainant's van, and that complainant would not have loaned her van to appellant. Complainant's neighbor and long-time friend also testified that, to her knowledge, complainant had never allowed appellant to use the van.

[3] One of appellant's attorneys discovered the competency and sanity evaluations while preparing for trial. The psychological evaluations apparently were inadvertently left unsealed in a clerk's file. After the evaluations were discovered, the clerk refused to release a copy of the evaluations to the attorney absent a court order. The trial court signed an order allowing appellant to receive a copy of the evaluations.

4

estimated five times for psychiatric problems. The competency evaluation also noted that the informant reported occasionally hearing voices and that on one occasion he suffered from hallucinations. The evaluating psychologist diagnosed the informant with paranoid schizophrenia and recommended that the informant continue taking psychoactive medications, but found the informant competent to stand trial.

Before the informant testified at trial, the trial court held a hearing outside the jury's presence during which the following exchange took place:

> THE COURT: Okay. I've looked at what's been marked as Defense Exhibit 5,[4] which is merely to educate me about the issues, I'm assuming, and you would never be allowed to cross-examine based on this evaluation. You want to ask him on cross-examination if he's on medication?
>
> [APPELLANT'S COUNSEL]: Yes, sir.
>
> THE COURT: And the nature of his medication and his understanding of what it's being prescribed for?
>
> [APPELLANT'S COUNSEL]: Yes, sir.
>
> THE COURT: And if he has the presence of mind to tell you paranoid schizophrenia, you intend -- yes, ma'am?
>
> [THE STATE]: Just one other piece of information. My understanding is the only medication he's currently on is for anxiety, that he is not taking any type of psychotropic drugs.
>
> [APPELLANT'S COUNSEL]: All the more reason to ask him if he's off his medication.
>
> THE COURT: Whoa, whoa. What that means is he's been reevaluated by somebody over here at some time. At some point in his -- okay. If he only testifies he's on an anti-anxiety -- which one of you is doing it?

_____
[4] The competency and sanity evaluations.

[APPELLANT'S COUNSEL]: Me.

THE COURT: You're doing it?

[APPELLANT'S COUNSEL]: Yes, sir.

THE COURT: Where does that leave you? Where do you think that leaves me?

[APPELLANT'S COUNSEL]: Well, that leaves me with just that, that that's the medication he takes, that he's on anti-anxiety, and I don't think the jury will think much of it.

THE COURT: I don't think they will either, but you don't get into paranoid schizophrenia.

[APPELLANT'S COUNSEL]: Okay. Then the question I'm being barred to ask is whether or not he's ever been diagnosed with any mental disease or defect in the last five years?

THE COURT: You're saying that like it's some kind of well-established rule that one can ask that, and it's not.

[APPELLANT'S COUNSEL]: It's not that it is or it isn't, Judge. It's just with this particular witness, considering --

THE COURT: He has been evaluated, and currently he is on that kind of medication and has been for actually how long, I don't know. Do you happen to know how long?

[THE STATE]: Which, the anti-anxiety medication?

THE COURT: Only the anti-anxiety.

[THE STATE]: I do not know, Judge. I don't have his records.

THE COURT: We don't know when anything else may have ended?

[APPELLANT'S COUNSEL]: Judge, I'll restrict my questioning on that issue beginning as to what medications he's currently taking.

THE COURT: All right.

[APPELLANT'S COUNSEL]: If we want to go somewhere else, I'll approach the bench on that.

THE COURT: That's going to be the ruling, yes, sir.

Appellant did not attempt to make an offer of proof regarding the informant's mental state outside the presence of the jury.

After the conclusion of the hearing, the informant testified before the jury that he and appellant were cellmates in 2012. The informant testified that appellant told him appellant had sexually assaulted, robbed, and killed a 71-year-old woman who lived across the street from him because appellant needed more money for drugs. The informant also provided additional details of the murder that conformed with other testimony and evidence presented during the trial. When asked about any medications he was currently taking, the informant responded that he was taking medication for anxiety, high blood pressure, and depression.

The trial court allowed appellant to impeach the informant at trial with evidence of numerous prior convictions, and with inconsistencies between several letters that the informant wrote to the District Attorney's Office describing appellant's alleged jailhouse statements. Appellant did not attempt to question the informant regarding his mental health history.

## I.     Standard of Review

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). Unless the trial judge's decision was outside the zone of reasonable disagreement, we will uphold the trial court's ruling. *Id.*

## II.    Error Preservation

The State contends that appellant did not preserve error regarding the trial court's exclusion of evidence regarding the informant's mental health history. Appellant contends that, based on the above-quoted hearing discussion, the "trial court was well aware of Appellant's desire to question [the informant] regarding his mental health history and the medications he was currently taking or not taking and as such error is preserved."

Appellant indicated during the hearing that he wanted to ask the informant "whether or not he's ever been diagnosed with any mental disease or defect in the last five years," but did not provide any basis for why such evidence would be admissible. Based on the discussion during the hearing, appellant could have been relying on the Texas Rules of Evidence or the Confrontation Clause of the United States Constitution. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (appellant's argument that evidence is admissible to attack a witness's credibility may involve either the constitutional right of confrontation or evidentiary rules).

On appeal, appellant does not identify any specific rules of evidence or constitutional provisions that would allow appellant to impeach the informant with evidence regarding the informant's mental health history. Appellant relies on several cases involving the Confrontation Clause. *See Virts v. State*, 739 S.W.2d 25 (Tex. Crim. App. 1987); *Perry v. State*, 236 S.W.3d 859 (Tex. App.—Texarkana 2007, no pet.). Appellant also employs a harm analysis for constitutional error. *See* Tex. R. App. P. 44.2(a).

In order to preserve for appeal an issue regarding the denial of the constitutional right of confrontation, appellant was required to articulate clearly that the Confrontation Clause required admission of the evidence so that the trial

court could rule on the issue. *See Reyna*, 168 S.W.3d at 179-80. Because appellant did not specifically articulate in the trial court that the Confrontation Clause required admission of the informant's mental health history, appellant did not preserve any issue regarding the denial of his constitutional right of confrontation for appeal. *See id.*; *see also Cantu v. State*, 939 S.W.2d 627, 634 (Tex. Crim. App. 1997) (where appellant's objections to co-defendant's "hearsay statements" encompassed both the Confrontation Clause and the evidentiary rules and appellant did not specify at trial which complaint he was asserting, the objection was insufficient to preserve Confrontation Clause issue for appeal); *Perry*, 236 S.W.3d at 863-64 (where appellant sought to impeach co-defendant's credibility with cross-examination regarding co-defendant's mental health history, Confrontation Clause issue was not preserved because appellant did not raise it at trial).

Appellant appears to argue on appeal only that the trial court's ruling violated appellant's rights under the Confrontation Clause; to the extent the argument could be viewed as a broader claim that the trial court's ruling violates the Texas Rules of Evidence, we likewise reject that argument. When proffered impeachment testimony is challenged, the proponent must show on the record why such evidence should have been admitted. *Virts*, 739 S.W.2d at 29; *see also Reyna*, 168 S.W.3d at 177 ("[I]t is not enough to tell the judge that evidence is admissible. The proponent . . . must have told the judge why the evidence was admissible."). Here, the State challenged any cross-examination on the informant's mental health history. When confronted with the imminent preclusion of such cross-examination, appellant made no showing why that cross-examination should be permitted under the evidentiary rules. Accordingly, we conclude that appellant did not preserve a claim that the trial court's ruling violated the Texas

Rules of Evidence. *Cf. Perry*, 236 S.W.3d at 864 (issue regarding cross-examination on witness's mental health history preserved where a discussion of Rule 608(b) (specific instances of conduct) was presented by both parties during argument in the trial court).

## III.  No Abuse of Discretion

Even if appellant had preserved error on a claim under the evidentiary rules, we conclude that the trial court did not abuse its discretion by precluding appellant from cross-examining the informant concerning the informant's mental health history.

Generally, "[a] witness may be cross-examined on any relevant matter, including credibility." Tex. R. Evid. 611(b).  This includes "the right to impeach the witness with relevant evidence . . . that might go to any impairment or disability affecting the witness's credibility." *Virts*, 739 S.W.2d at 29.  "Cross-examination of a testifying State's witness to show that the witness has suffered a recent mental illness or disturbance is proper, provided that such mental illness or disturbance is such that it might tend to reflect upon the witness's credibility." *Id.* at 30.  However, "the mere fact that the State's testifying witness has in the recent past suffered or received treatment for a mental illness or disturbance does not, for this reason alone, cause this kind of evidence to become admissible impeachment evidence." *Id.*  If the mental illness occurred in the remote past and there is no showing that the condition has revived, then exclusion of such evidence is proper. *Id.*  The decision of whether such evidence should be admitted is made on an ad hoc basis, and great deference is given to the trial judge's decision. *Id.* at 28.

The informant's mental health history is relevant to a determination of the informant's credibility to the extent it reveals that the informant suffered from a mental illness or disturbance at two specific points in time:  (1) in mid- to late

2012, when appellant made his jailhouse statements to the informant, and the informant in turn sent letters regarding those confessions to the District Attorney's Office; or (2) in January 2014, when the informant testified at trial. The psychological evaluations diagnosing the informant with paranoid schizophrenia were conducted in December 2010. Appellant did not make an offer of proof outside the jury's presence showing that the informant was reevaluated at any time after 2010. Nor did appellant attempt to demonstrate that the informant was suffering from paranoid schizophrenia during the time period of the jailhouse confessions or when the informant testified at trial. To the contrary, evidence that the informant no longer was taking psychotropic medication at the time of trial — while he was incarcerated and under State care — suggests that he was not suffering from symptoms of paranoid schizophrenia at that time. Accordingly, appellant did not demonstrate that the informant was suffering from a mental impairment that might affect his credibility at either relevant point in time, and the trial court did not abuse its discretion in precluding cross-examination concerning the informant's mental health history.

## IV. No Harm

Even if the trial court's decision to preclude cross-examination regarding the informant's mental health history was erroneous, we nevertheless conclude that any such error was harmless.

Because appellant did not preserve a constitutional complaint, the only potential remaining claim is one that the mental health history cross-examination was improperly excluded under the Texas evidentiary rules. The proper harm analysis for such an alleged error is found in Texas Rule of Appellate Procedure 44.2(b). *See Perry*, 236 S.W.3d at 869 ("As we have determined that Perry failed to preserve his constitutional right of confrontation, the test in determining if the

11

error is reversible is that found in Tex. R. App. P. 44.2(b)."). Under that test, any error that does not affect appellant's substantial rights must be disregarded. *See* Tex. R. App. P. 44.2(b). A substantial right is affected if the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

To determine whether the excluded cross-examination affected appellant's substantial rights, we first assume that the damaging potential of the cross-examination was fully realized. *Shelby v. State*, 819 S.W.2d 544, 547 (Tex. Crim. App. 1991); *Saglimbeni v. State*, 100 S.W.3d 429, 435-36 (Tex. App.—San Antonio 2002, pet. ref'd). We then consider the following five factors: (1) the importance of the witness's testimony; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *See Shelby*, 819 S.W.2d at 547; *Saglimbeni*, 100 S.W.3d at 436. In determining whether the error had a substantial and injurious effect or influence on the jury's verdict, we consider all of the evidence presented. *Perry*, 236 S.W.3d at 869. Accordingly, assuming that the damaging potential of the proposed cross-examination was fully realized, we consider the factors below.

The informant's testimony provided an admission of guilt by appellant. The testimony bolstered the State's case because there were no witnesses to the crime. The informant's testimony was not cumulative of other testimony in the sense that no other witness testified that appellant confessed to them. However, as discussed below, the testimony was cumulative in that certain details were corroborated by other testimony.

Other evidence was presented at trial that corroborated the informant's testimony. The informant testified that while he and appellant were cellmates, appellant confessed to killing complainant. The informant testified that appellant shared details of the crime, which the informant included in his letters to the District Attorney's Office and testified to at trial. Specific details mentioned by the informant that were corroborated by other testimony or evidence included the following: (1) complainant was a white 71-year-old female who lived across the street from appellant; (2) appellant had been using crack cocaine; (3) appellant knocked on complainant's door and attacked her after she let him in, which accounted for the absence of any signs of forced entry; (4) appellant wore a condom while forcing complainant to perform oral sex on him, which accounted for the single sperm cell found in complainant's mouth; (5) appellant stabbed complainant in the throat; (6) the knife appellant used "was black" (the knife had a black handle), and appellant left the knife at the scene; (7) appellant wore gloves while handling the knife, which explained the lack of appellant's DNA on the knife; (8) appellant went through complainant's purse and dumped the contents on the floor; (9) appellant was concerned his DNA might be on the purse because he took his gloves off before going through the purse; and (10) appellant took complainant's van, drove it without gloves on, and then dumped the van some distance from complainant's house.

With the exception of the informant's mental health history, appellant was otherwise permitted to cross-examine the informant fully. The jury was presented with substantial evidence from which it could decide whether the informant's credibility was suspect; this included: testimony regarding the informant's 20-plus criminal convictions, over half of which were felony convictions; testimony that the prosecutor agreed to write a letter to the informant's parole board in exchange

for the informant's cooperation in the case; contradictions between the informant's earlier letters to the District Attorney's Office and his later letters and trial testimony;[5] and testimony that the informant had testified for the State two or three times. Appellant also was permitted to ask whether the informant received a reduced sentence and a dismissal in two other pending cases in exchange for his cooperation in testifying against appellant, which the informant denied.

Finally, while the informant's testimony was important, the State's case was strong without his testimony. The State presented DNA evidence placing appellant in complainant's van, which was stolen from complainant's house on the morning of the murder. Appellant's own DNA expert admitted that there was sufficient DNA evidence to support the conclusion that appellant handled complainant's purse and that appellant's DNA was under complainant's fingernails. A timeline was established by testimony of the motel maintenance man, officer testimony regarding video footage from the gas station and red light cameras, and the testimony of the officer who spoke with appellant when he approached the crime scene on foot. This timeline suggested that appellant arrived in his neighborhood around the time the murder occurred, and then had time to drive complainant's van away after the murder and return to the neighborhood on foot.

Considering all of the evidence presented, and in light of the foregoing examination, we cannot conclude that appellant's inability to challenge the informant's credibility with the informant's mental health history had a substantial and injurious effect on the jury's determination of guilt. Even assuming, as we are required to do, that the damaging potential of a theoretical cross-examination on the informant's mental health history was fully realized — *i.e.*, assuming the jury

---

[5] The informant explained these contradictions as being the result of appellant's story changing over time.

14

believed the informant was suffering from paranoid schizophrenia at all relevant times — such mental disability would not explain how the informant knew numerous specific details of the crime that were corroborated by other witnesses and testimony. Nor did the State's case hinge solely on the informant's testimony; DNA and circumstantial evidence could support a conclusion that appellant was guilty of the crime. Accordingly, we conclude that the trial court's preclusion of any cross-examination on the informant's mental health history did not harm appellant so as to require reversal under Rule 44.2(b).

## CONCLUSION

Having overruled appellant's sole issue, we affirm the trial court's judgment.


/s/    William J. Boyce
         Justice



Panel consists of Justices Boyce, McCally, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).